UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11928-GAO

UNITED STEELWORKERS OF AMERICA, LOCAL 12003,
Petitioner,

v.

KEYSPAN ENERGY DELIVERY,
Respondent.

OPINION AND ORDER
August 3, 2009

O'TOOLE, D.J.

## I.    Background

A panel of arbitrators issued an award sustaining the just cause employment termination of James Duffy, a member of the United Steelworkers of America, Local 12003 (the "Union"), by Keyspan Energy Delivery ("Keyspan"). Pursuant to the collective bargaining agreement between the Union and Keyspan, the arbitration panel was comprised of an arbitrator appointed by each party and a third jointly selected neutral arbitrator. The neutral arbitrator chosen by the parties' arbitrators was attorney Sarah Kerr Garraty.

Between September 2007 and May 2008, Garraty presided over fourteen days of hearings. On October 8, 2008, Garraty met with the two party-appointed arbitrators and informed them that she intended to sustain Keyspan's discharge of Duffy. Before Garraty had produced her final written decision, the Union's attorney, Paul F. Kelly, learned that Garraty's husband, Jeffrey Kerr, had once, on behalf of his employer Triad Consulting Group ("Triad"), conducted a two-hour career development training program for fourth-year associates at Goodwin Procter LLP ("Goodwin

Procter"), the law firm representing Keyspan in the arbitration proceedings. The program had been held on June 12, 2006 at the Babson Executive Conference Center in Wellesley, Massachusetts. The Goodwin Procter lawyer representing Keyspan in the arbitration, Bradford J. Smith, had not been involved in the training session.

After the issue surfaced, Garraty provided information to the parties regarding the relationship between her husband and Goodwin Procter. She further disclosed that she had been unaware of the relationship until Kelly discovered it after she had indicated her intention to rule against the grievant in the arbitration. This fact is not disputed by the Union.

By letters dated October 27, 2008 and October 29, 2008, the Union twice requested Garraty to recuse herself from the arbitration proceedings. On October 30, 2008, Garraty responded to the Union's request listing several reasons why she believed that recusal was unwarranted in this situation: (1) she did not know of any connection between Kerr and Goodwin Procter prior to Kelly's bringing it to her attention in October 2008; (2) she did not learn of the connection until after she announced her vote to the other arbitrators in executive session; and (3) the Code of Professional Responsibility for Arbitrators does not require disclosure of personal relationships unless the relationship "might reasonably appear to impair impartiality," and Garraty did not believe the prior relationship between Kerr and Goodwin Procter met that standard.

The award was issued November 14, 2008, with Garraty and the arbitrator appointed by Keyspan agreeing and the arbitrator appointed by the Union dissenting. Shortly thereafter, the Union filed the present Petition to Vacate Arbitration Award ("Petition"). The parties have filed cross-motions for summary judgment to vacate, and alternatively to affirm, the arbitration award.

**II.     Discussion**

The Federal Arbitration Act ("FAA") allows vacatur of an arbitration award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2) (2009). In Commonwealth Coatings Corp. v. Continental Casualty Corp., 393 U.S. 145, 150 (1968), a plurality of the Supreme Court agreed that "evident partiality" meant "an appearance of bias." Several courts, including the First Circuit, have interpreted the Court's "appearance of bias" standard as requiring an objective assessment of whether a reasonable person would believe that an arbitrator was partial to a party to the arbitration. See JCI Commc'n, Inc. v. Int'l Bhd. of Elec. Workers, Local 103, 324 F.3d 42, 51 (1st Cir. 2003); Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 626 (6th Cir. 2002); ANR Coal Co., Inc. v. Cogentrix of N.C., Inc., 173 F.3d 493, 500-501 (4th Cir. 1999); Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds, 748 F.2d 79, 84 (2d Cir. 1984). A party seeking to set aside an award on the basis of "evident partiality" must show that the alleged partiality is or was "direct, definite, and capable of demonstration rather than remote, uncertain or speculative." Kiewit/Atkinson/Kenny v. In't Bhd. of Elec. Workers, Local 103, 76 F. Supp. 2d 77, 79 (D. Mass. 1999) (citing Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 146 (4th Cir. 1993)).

The relationship between Garraty's husband and Keyspan's law firm was too attenuated for any reasonable person to believe that because of it Garraty acted with partiality towards Keyspan during the arbitration proceedings in question. Kerr had participated in a single training session of short duration. In doing so, Kerr was acting within the scope of his employment for an independent contractor that had an arm's-length relationship with the law firm. (The parties stipulate that the 2006 training was the only time Goodwin retained Triad.) The subject matter of the training program was unrelated either to labor-management disputes in general or, of course, the dispute between the Union

and Keyspan in particular. Further, the training program was held about a year prior to Garraty's appointment as the neutral arbitrator in this case; it was not contemporaneous with Garraty's service as an arbitrator. The parties agree that Garraty first learned of the relationship after the arbitration hearings concluded and she had already announced her decision. It is not possible reasonably to think that her decision had been influenced by a relationship she was unaware of.

A single, brief, and unrepeated interaction between Kerr and Goodwin Procter attorneys other than Smith, not involving Keyspan and involving career training rather than labor issues, would not lead a reasonable person to believe that Garraty, who was unaware of the relationship when she heard and ruled on the grievance, had acted with evident partiality in favor of Keyspan and against the Union.

## **III.**     **Conclusion**

For the foregoing reasons, the petitioner's motion for summary judgment (dkt. no. 10) is DENIED, and the respondent's motion for summary judgment (dkt. no. 16) is GRANTED. The petition to vacate the award is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.<br>United States District Judge